IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

Case No. 7:21-CV-00059-M

| | | |
|---|---|---|
| SHAWN LA'DERRICK HILL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | ORDER |
| J. M. BUONICONTI, *individually*, | ) | |
| EDWARD J. MCMAHON, *officially as the* | ) | |
| *Sheriff of New Hanover County*, and THE | ) | |
| OHIO CASUALTY INSURANCE | ) | |
| COMPANY, *as part of* LIBERTY | ) | |
| MUTUAL GROUP, INC.,￼ | ) | |
| | ) | |
| Defendants. | ) | |

This matter comes before the court on motions to dismiss filed by Defendant Edward J.

McMahon (Sherriff McMahon) [DE 33], Defendant Ohio Casualty Insurance Company (Ohio

Casualty), [DE 40], and Defendant J.M. Buoniconti (Officer[1] Buoniconti) [DE 44]. This is a case

of mistaken identity. Plaintiff Shawn La'Derrick Hill (Plaintiff) alleges that he was arrested and

detained for more than two weeks based on a fugitive warrant issued for another man before the

error was recognized.

Plaintiff claims that Officer Buoniconti violated his Fourth Amendment rights by arresting

him on an unreasonable belief that he was the subject of that arrest warrant. He also claims that

Sheriff McMahon and his officers acted negligently under North Carolina law by failing to

---

[1] Defendant J.M. Buoniconti's filings most often identify him as "Officer Buoniconti," so the court
uses that title. *Compare* DE 45 at 2–3 (referring to the moving defendant as "Officer Buoniconti"
several times), *with id.* at 11 (referring to him as "Investigator Buoniconti" once).

investigate his claims of innocence during his pretrial detention. Finally, he brings a statutory claim against Ohio Casualty as the issuer of Sheriff McMahon's surety bond. Defendants move to dismiss Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6). These motions have been fully briefed and no hearing is necessary to resolve them.

The court denies Officer Buoniconti's motion to dismiss Plaintiff's claim under 42 U.S.C. § 1983 but grants in part and denies in part what it construes to be a motion to strike Plaintiff's request for punitive damages. The court grants Sheriff McMahon's motion and dismisses Plaintiff's claim against him without prejudice. Plaintiff's statutory claim against Ohio Casualty cannot proceed without his underlying claim against Sheriff McMahon, so the court grants Ohio Casualty's motion as well.

## I.     Background

### A. Factual Allegations

Plaintiff makes the following factual allegations—as distinct from legal conclusions or unsupported inferences—which the court accepts as true. *See King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016).

**Plaintiff's Arrest at the Port of Wilmington:** Plaintiff is a truck driver from Augusta, Georgia. DE 30 ¶¶ 1, 7. On April 22, 2019, he drove to the Port of Wilmington (the Port) to pick up a load for his employer. *See id.* ¶ 7. When he arrived at the Port's entrance, he provided his Transportation Worker Identification Credential (TWIC) to a security officer at the checkpoint. *See id.* ¶ 8 (explaining that this card is a "form of government clearance"). His TWIC shows his full name "Shawn La'Derrick Hill." *See id.* After scanning this card, the security officer contacted the police department affiliated with the North Carolina State Ports Authority. *See id.* ¶ 9.

Within "moments," Officer Buoniconti responded to the Port's entrance and told Plaintiff that he was "going to be placed into custody." *See id.* ¶ 10. Officer Buoniconti moved Plaintiff

into a processing room at the back of the Port and told him that there was an outstanding fugitive warrant from St. Louis, Missouri pertaining to felony forgery charges issued against him. *See id.* ¶ 11. "Shocked," Plaintiff told Officer Buoniconti "that's impossible" and asked, "are you sure you have the right person?" *See id.* ¶ 12. Officer Buoniconti did not have the right person—the warrant had been issued for a different "Shawn L. Hill." *See id.* ¶¶ 13, 30.

Officer Buoniconti looked at a photo of that fugitive and told Plaintiff that the name listed on the warrant was "Shawn L. Hill." *See id.* ¶ 13. Officer Buoniconti then asked Plaintiff for his social security number to compare with that listed on the fugitive warrant. *See id.* ¶ 14. Plaintiff provided his social security card as well as two other government-issued identification cards bearing his photograph. *See id.* ¶ 15. All three cards state Plaintiff's full name "Shawn La'Derrick Hill." *See id.*

After reviewing these cards, Officer Buoniconti stated that something was "not right" because Plaintiff's social security card did not match the social security number on the fugitive warrant. *See id.* ¶ 16. Still, he continued detaining Plaintiff. *See id.* ¶ 17. Plaintiff asked, "so you're going to arrest me and all you have to go on is the name?" *See id.* ¶ 18. Plaintiff continued to profess his innocence, asking "[s]o the next person you pull over named Shawn L. Hill, you're going to arrest him too?" *See id.* Despite having noticed this discrepancy, *see id.* ¶ 17, Officer Buoniconti responded "I have to lock you up based on what I got," *id.* ¶ 19.

Plaintiff then asked if Officer Buoniconti was "at least going to fingerprint [him]," but was told "no, because of what the computer said, you guys are a close match, I'm taking you to the county jail." *See id.* ¶¶ 20–21. Officer Buoniconti contacted the New Hanover County Sheriff's Office to let them know he would be taking Plaintiff to the New Hanover County Jail in connection

3

with an outstanding warrant. *See id.* ¶ 22. He ignored Plaintiff's continued attempts to convince him that the warrant identified a different "Shawn L. Hill." *See id.* ¶ 23.

**Plaintiff's Detention at the New Hanover County Jail:** Officer Buoniconti told at least one of Sheriff McMahon's officers that he had been taken into custody on an outstanding fugitive warrant from Missouri. *See id.* ¶ 25. That same day, a magistrate ordered that Plaintiff be committed to the New Hanover County Jail. *See id.* ¶ 26; *see also* DE 30-1.[2] The magistrate's order further advised Plaintiff that "[his] release is not authorized," and stated that "prior to release, [he] shall provide his . . . fingerprints." *See* DE 30-1 (including these directives, along with the order that "[Plaintiff] is required to provide fingerprints under G.S. 15A-502," within the portion of the order directed "To The Defendant Named Above"). In the "Order of Commitment," the magistrate directed Sheriff McMahon to receive Plaintiff into his custody and "produce [him] to the Court as provided above." *See id.*

Plaintiff "was then placed into the New Hanover County Jail." DE 30 ¶ 27. He "stated his innocence more than once, explained that he had *not* been fingerprinted by [Officer] Buoniconti, and offered to show more than one of [Sheriff] McMahon's officers" his social security card and Georgia driver's license. *See id.* Sheriff McMahon's officers did not believe him. *Id.*

Plaintiff contacted his sister for help after a week in jail and "several failed attempts to prove his innocence." *See id.* ¶ 27. His sister contacted the Clerk's Office at the Circuit Court of St. Louis County, Missouri and obtained more information about the fugitive warrant "within hours" of doing so. *See id.* ¶ 28. She provided this to "the respective Public Defender's Office in

---

[2] This court may consider the magistrate's Conditions of Release and Release Order attached to Plaintiff's Complaint as an exhibit. *See Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016).

North Carolina." *See id.* ¶ 29. At some point, Sheriff McMahon's officers reviewed the information Plaintiff's sister had obtained and fingerprinted him. *See id.* ¶ 30. "The results revealed that Plaintiff was not the 'Shawn L. Hill' who was the subject of the outstanding fugitive warrant." *See id.* Plaintiff was then released after having spent two weeks and one day in the New Hanover County Jail. *See id.* ¶ 31.

### B. Procedural History

Plaintiff initiated this action less than two years after his arrest. His initial complaint, filed April 7, 2021, named New Hanover County, the New Hannover County Sheriff's Department, and Officer Buoniconti as defendants. *See* DE 1. After the county and sheriff's department jointly moved to dismiss this complaint, *see* DE 11, Plaintiff filed an amended complaint naming Officer Buoniconti, Sheriff McMahon, and The Travelers Companies, Inc. as defendants, *see* DE 20. After Sheriff McMahon moved to dismiss this first amended complaint, *see* DE 28, Plaintiff again amended his complaint to substitute Ohio Casualty for The Travelers Companies as the correct issuing surety of Sheriff McMahon's bond, *see* DE 30. Defendants direct their instant motions at this second amended complaint (the Complaint).

Plaintiff's Complaint includes three claims: (1) unreasonable seizure in violation of the Fourth Amendment against Officer Buoniconti in his individual capacity under 42 U.S.C. § 1983, *see* DE 30 ¶¶ 35–41; (2) negligence against Sheriff McMahon in his official capacity under North Carolina common law, *see* DE 30 ¶¶ 42–46; and (3) an action on the surety bond issued to Sheriff McMahon against Ohio Casualty under N.C. Gen. Stat. §§ 58-76-5 and 162-50, *see* DE 30 ¶¶ 47–49. Plaintiff emphasizes that he "has raised only one claim against [Officer] Buoniconti, and that Fourth Amendment claim is against [Officer] Buoniconti [in] his individual capacity." *See* DE 52 at 2 n.1. He also acknowledges that his statutory claim against Ohio Casualty "rise[s] and fall[s]

5

upon the validity of" his underlying negligence claim against Sheriff McMahon. *See* DE 43 at 2 (citing DE 41 at 4) (adopting this position as the basis for submitting a joint response to these Defendants' motions).

Sheriff McMahon moves to dismiss the negligence claim brought against him in the second amended complaint under Federal Rule of Civil Procedure 12(b)(6), *see* DE 33, and submitted a supporting memorandum, *see* DE 34. Ohio Casualty also moves to dismiss the statutory claim brought against it under Rule 12(b)(6), *see* DE 40, and adopts Sheriff McMahon's arguments, *see* DE 41 at 3–4. Plaintiff filed a joint response in opposition, *see* DE 43, to which Sheriff McMahon and Ohio Casualty jointly replied, *see* DE 49. Finally, Officer Buoniconti moves to dismiss Plaintiff's Fourth Amendment claim under Rule 12(b)(6),[3] *see* DE 44, and submitted a supporting memorandum, *see* DE 45. Plaintiff responded in opposition. *See* DE 52.

## II. Legal Standards

### A. Procedural Standards

Rule 8 of the Federal Rules of Civil Procedure requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). A defendant against whom a claim has been brought can challenge a pleading's sufficiency under Rule 8 by moving the court under Rule 12(b)(6) to dismiss the pleading for "failure to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6).

When considering a Rule 12(b)(6) motion to dismiss, the court must accept as true all of the well-pleaded factual allegations contained within the complaint and must draw all reasonable inferences in the plaintiff's favor, *see Hall v. DIRECTV, LLC*, 846 F.3d 757, 765 (4th Cir. 2017),

---

[3] The court need not address Officer Buoniconti's arguments that any claims brought against him in his official capacity should be dismissed under Rules 12(b)(1) and (b)(2), *see* DE 45 at 15–17, as the Complaint includes no such claims, *see* DE 30 ¶¶ 36–41; DE 52 at 2 n.1.

but any legal conclusions proffered by the plaintiff need not be accepted as true, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The *Iqbal* Court made clear that "Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *See id.* at 678–79.

To survive a Rule 12(b)(6) motion, the plaintiff's well-pleaded factual allegations, accepted as true, must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). *Twombly*'s plausibility standard requires that a plaintiff's well-pleaded factual allegations "be enough to raise a right to relief above the speculative level," i.e., allege "enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *See id.* at 555–56. A speculative claim resting on conclusory allegations without sufficient factual enhancement cannot survive a Rule 12(b)(6) challenge. *See Iqbal*, 556 U.S. at 678–79 (quoting Fed. R. Civ. P. 8(a)(2)) ("where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief.'"); *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 557) ("'naked assertions' of wrongdoing necessitate some 'factual enhancement' within the complaint to cross 'the line between possibility and plausibility of entitlement to relief.'").

### III. Officer Buoniconti's Motion to Dismiss Plaintiff's Fourth Amendment Claim under 42 U.S.C. § 1983

Plaintiff's Complaint brings a Fourth Amendment claim against Officer Buoniconti in his individual capacity under 42 U.S.C. § 1983 "for the violation of his right to be free from

unreasonable seizures." See DE 30 ¶ 36. He bases this claim on Officer Buoniconti arresting him on the erroneous belief that he was the man named in an outstanding warrant. Plaintiff seeks compensatory and punitive damages as well as attorney's fees. *See id.* ¶¶ 40–41.

"Section 1983 provides a federal cause of action to redress constitutional harms committed under color of state law." *Smith v. Travelpiece*, 31 F.4th 878, 882–83 (4th Cir. 2022). To state his claim under § 1983, Plaintiff must allege that Officer Buoniconti (1) deprived him of a right secured by the Constitution or laws of the United States, and (2) that the deprivation was performed under color of state law. *See Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). Officer Buoniconti does not, for this motion, dispute that he acted under color of state law. *See* DE 45 at 12 (arguing that Plaintiff's claim should be dismissed "even assuming arguendo[] that [Plaintiff] has alleged that the Moving Defendants [sic] were acting to and under color of state law"). Instead, Officer Buoniconti argues that Plaintiff has not alleged a deprivation of any constitutional right, *see id.*, and that he is entitled to qualified immunity, *see id.* at 6. Dismissal is not appropriate at this stage on either ground.

### A. Plaintiff adequately alleges that his Fourth Amendment rights were violated.

Plaintiff alleges that Officer Buoniconti violated his Fourth Amendment right to be free from unreasonable seizures. He does not challenge the validity of the Missouri warrant as to the fugitive "Shawn L. Hill." But as alleged, neither this warrant nor any other—facially valid or otherwise—authorized Plaintiff's arrest. Put simply, Plaintiff alleges that Officer Buoniconti acted unreasonably when he arrested the wrong "Shawn L. Hill."

The Supreme Court's decision in *Hill v. California*, 401 U.S. 797 (1971) set a two-pronged standard for evaluating the reasonableness of this sort of mistaken arrest. *Hill* held that a mistaken arrest is valid under the Fourth Amendment if the arresting officer (1) had probable cause to arrest

the person sought, and (2) reasonably believed that the arrestee was that person. *See* 401 U.S. at 802. Plaintiff does not challenge whether the warrant gave Officer Buoniconti probable cause to arrest the fugitive "Shawn L. Hill" named therein. *See, e.g., Baker v. McCollan*, 443 U.S. 137, 143–44 (1979). Thus, the constitutionality of Plaintiff's arrest turns on the reasonableness of Officer Buoniconti's belief that Plaintiff was that other man.

Reasonableness requires "sufficient probability, not certainty." *See Hill*, 401 U.S. at 804. The reasonableness of the officer's belief must be assessed objectively considering the facts reasonably available at the time of the arrest as well as any exigencies then present. *See Brown v. Wiita*, 7 F. App'x 275, 278 (4th Cir. 2001) (per curiam) (citing *Pritchett v. Alford*, 973 F.2d 307, 312–13 (4th Cir. 1992)). Officers who mistakenly arrest the wrong person may, however, be held liable if they "act in an objectively unreasonable manner in the circumstances, as for example, in failing to investigate readily available exculpatory evidence." *See id.* at 279 (citing *Clipper v. Takoma Park*, 876 F.2d 17 (4th Cir. 1989)).

Viewed in the light most favorable to Plaintiff, his allegations make out a plausible claim that Officer Buoniconti's belief was objectively unreasonable. The only alleged fact suggesting that Plaintiff was the fugitive mentioned in the warrant is that he shares a first name, last name, and middle initial with that other man. *See Simons v. Marin Cnty.*, 682 F. Supp. 1463, 1472 (N.D. Cal. 1987) ("On the basis of the evidence so far before this court, there was little if any reason, other than a superficial congruence of names, to believe that the plaintiff was in fact the man sought by the warrant."). The Fourth Circuit recently held in a related Fourth Amendment context that a common name, race, and sex combined with a similar criminal history did not establish the probable cause that an investigating officer needed to obtain an arrest warrant for a person living "near" the area of a controlled purchase. *See Smith v. Munday*, 848 F.3d 248, 254 (4th Cir. 2017).

*Smith's* statement that "[s]uch scant evidence barely meets the threshold of 'mere suspicion,' let alone the threshold of probable cause" for obtaining a warrant, *see id.*, suggests that a common name and sex would similarly fall short of the "sufficient probability" threshold for making a reasonable arrest, *see Hill*, 401 U.S. at 804.

Plaintiff also pleads with particularity several other factual allegations weighing against the reasonableness of Officer Buoniconti's belief. The pertinent allegations can be grouped into three categories. First, Plaintiff alleges circumstances that would have given Officer Buoniconti little reason to suspect that he had found a fugitive from Missouri. Second, Plaintiff alleges that the information available to Officer Buoniconti showed that he was not the "Shawn L. Hill" named in the warrant. Finally, Plaintiff alleges that Officer Buoniconti rebuffed his efforts to provide exculpatory evidence. The court addresses each category in turn below.

To start, this encounter began with Plaintiff presenting himself at a state security checkpoint and providing what he describes as "a form of government clearance." *See* DE 30 ¶¶ 7–8. Officer Buoniconti was presumably aware of these facts as he arrived at the Port's entrance "moments" after the security officer scanned Plaintiff's credentials. *See id.* ¶¶ 9–10. As other courts have recognized, voluntarily approaching authorities is "hardly an expected tactic from the subject of an outstanding warrant." *See, e.g., Caceres v. Port Auth. of New York & New Jersey*, No. 06 CIV. 1558 (JGK), 2008 WL 4386851, at *2, 6 (S.D.N.Y. Sept. 24, 2008) (weighing these circumstances against the reasonableness of mistakenly arresting the plaintiff after he "voluntarily approached" them at a Port Authority police station to retrieve an impounded vehicle).

In contrast, a mistaken arrest is more likely to be reasonable if the officer encountered the arrestee somewhere that he understandably expected to find the proper person. For example, the officers sued in *Mensh v. Dyer* acted reasonably when they arrested the plaintiff at the address

listed in the "arrest packet" they received with a warrant that had, in fact, been issued for the man's same-named son. *See* 956 F.2d 36, 37–39 (4th Cir. 1991). Similarly, the arresting officers in *Hill v. California* encountered a man fitting the perpetrator's description inside the perpetrator's apartment. *See* 401 U.S. at 799. In finding the mistaken arrest to be reasonable despite the plaintiff's protests and discrepant identification card, the Supreme Court counted in the officers' favor the considerable evidence connecting the perpetrator to the place where the plaintiff was found. *See id.* at 803–04.

At minimum, Plaintiff's allegations place this case in a factually distinct posture from these reasonable mistakes. Plaintiff prompted the encounter by voluntarily approaching a state security checkpoint. He did so nearly one thousand miles away from the jurisdiction that issued the warrant. And nothing suggests that the North Carolina State Ports Authority had been investigating this fugitive or had any reason to expect that he would appear at the Port's entrance. If anything, the alleged circumstances weigh against Officer Buoniconti's belief that Plaintiff was the proper subject of the Missouri fugitive warrant.

The second set of allegations concerns the information Officer Buoniconti had about Plaintiff and the proper subject of that warrant. Plaintiff alleges that the confirmatory actions Officer Buoniconti took instead supported his protests that he was not the fugitive sought. Most notably, Plaintiff's social security card did not match the number listed on the warrant but matched the two other government-issued identification cards he provided. *See* DE 30 ¶¶ 14–16. A reasonable officer would—as Officer Buoniconti allegedly did—recognize that something was amiss. *See* DE ¶ 16; *cf. Day v. Milam*, No. 1:11-CV-97, 2011 WL 5190809, at *2–3 (E.D. Va. Oct. 28, 2011) (noting that the officer did not compare the plaintiff's and fugitive's social security numbers and birthdates before arresting the plaintiff but immediately released her after recognizing

that they differed). Although discrepant identification cards are not necessarily dispositive, *see Hill*, 401 U.S. at 803–04, this fact also weighs against the reasonableness of the arrest.

The question thus becomes whether the other information available outweighed this discrepancy and satisfied the "sufficient probability" threshold for a reasonable arrest. *See generally Thompson v. Prince William Cnty.*, 753 F.2d 363, 365 (4th Cir. 1985) (stating that officers cannot be expected to "abandon obtention or execution of a warrant on someone who, for other strong indications . . . meets the warrant's description" based on slight discrepancies). For instance, the officers in *Hill* acted reasonably when they disregarded a discrepant identification card to arrest a man closely fitting the perpetrator's physical description inside the perpetrator's apartment. *See* 401 U.S. at 803–04 (crediting, also, the officers' skepticism about the plaintiff's evasive and unconvincing responses to their questions at the scene). Similarly, the corroborative evidence amassed by the investigating officer in *Brown v. Witta* led the Fourth Circuit to find that his ordering the arrest of the wrong "Robert Brown" was reasonable. *See* 7 F. App'x at 279–80. After receiving an arrest warrant for a man with the same name, the officer identified the plaintiff after conducting database queries and comparing the results with information provided by an undercover officer about the perpetrator. *See id.* at 279 (noting that, along with sharing the same first and last name, the plaintiff's description in the database "closely" matched the perpetrator's physical description and that he was the only man by that name living in the area where the undercover officer believed the perpetrator resided).

Plaintiff alleges, however, that Officer Buoniconti had no other corroborating information. *See* DE 30 ¶¶ 18, 35 (incorporating his contention that "all [Officer Buoniconti] [had] to go on is the name"). The photograph Officer Buoniconti reviewed was of the fugitive—not Plaintiff. *See* DE 30 ¶ 13; *cf. Johnson v. Hammett*, No. CV ELH-18-1059, 2019 WL 7185559, at *13 (D. Md.

Dec. 23, 2019) (noting the absence of any allegation that the officer ignored readily accessible information about the same-named New Mexico fugitive, like a photograph, that would have eliminated his concern that the plaintiff was that man sought by the warrant). At this stage and without allegations about the physical appearance of Plaintiff and the Missouri fugitive, this fact must be weighed in Plaintiff's favor.

Finally, before being taken to jail, Plaintiff offered what he argues to be readily available exculpatory evidence in the form of his fingerprints. *See* DE 30 ¶¶ 20–21, 38; *see also* DE 52 at 7. Officers need not "exhaust every potentially exculpatory lead or resolve every doubt about a suspect's guilt." *Torchinsky v. Siwinski*, 942 F.2d 257, 264 (4th Cir. 1991). But the Fourth Circuit has "held that a law enforcement officer's failure to pursue an easily obtainable piece of information that could completely exculpate a suspect weighed heavily against a finding that the officer's conduct was reasonable." *Wadkins v. Arnold*, 214 F.3d 535, 541 (4th Cir. 2000) (quoting *Clipper*, 876 F.2d at 20); *see also Brown*, 7 F. App'x at 279 (4th Cir. 2001). Evidence suggesting that the officers in *Clipper* neither reviewed the surveillance footage they had the FBI develop nor interviewed alibi witnesses identified by the arrestee sufficed to sustain a jury verdict against them. *See* 876 F.2d at 18–20 (noting that, viewed in the plaintiff's favor, both sources of evidence exculpated him). In contrast, the officer in *Brown* acted reasonably based on the other information available to him—including a description of the suspect consistent with the plaintiff's physical attributes—without waiting four-to-six weeks for a photograph of the plaintiff to arrive. *See* 7 F. App'x at 277 n.2, 280 n.4.

Plaintiff alleges facts falling closer to *Clipper* than *Brown*. As to complete exculpation, Plaintiff alleges that he was released after being fingerprinted when "the results" revealed that he was not the subject of the outstanding warrant. *See* DE 30 ¶¶ 30–31. Plaintiff's allegations also

suggest that this exculpatory evidence would have been easily obtainable. After all, Plaintiff was present and willing to provide his fingerprints, *see id.* ¶ 20, and the North Carolina State Ports Authority should have been able to take them, *see generally* N.C. Gen. Stat. 15A-502 (enumerating several circumstances under which "[i]t shall be the duty of the arresting law-enforcement agency" to cause arrestees to be fingerprinted).

Nothing in the Complaint suggests an exigency that would have required Officer Buoniconti to "lock [Plaintiff] up" without investigating any further. *See* DE 30 ¶¶ 19–21. Other courts finding mistaken arrests to be reasonable have emphasized the need to act quickly under circumstances when "additional efforts to verify [the plaintiff's] identity could have given him an opportunity to flee." *See Catlin v. City of Wheaton*, 574 F.3d 361, 365–66 (7th Cir. 2009) (identifying this as one of two reasons why officers did not act unconstitutionally by arresting the plaintiff without checking his license plates when "the defendants believed that they were confronting a dangerous felon on a racing motorcycle in an area adjacent to a state highway"). Here, however, Plaintiff was secured in a processing room at the back of the Port. *See* DE 30 ¶ 11; *see also id.* ¶¶ 8, 24 (alleging that Plaintiff's truck remained parked at the Port's entrance). He had fully cooperated with Officer Buoniconti's requests to that point, *see id.* ¶¶ 14–15, and was asking if he could provide more evidence, *see id.* ¶ 20. Thus, there was little risk that Plaintiff would slip away had Officer Buoniconti taken the time to take his fingerprints or otherwise investigate his identity.

Taken together and in the light most favorable to Plaintiff, his Complaint plausibly alleges that the information reasonably available to Officer Buoniconti could not support a reasonable belief that he was the Missouri fugitive named in the warrant. In short, the allegations suggest that Officer Buoniconti arrested Plaintiff based on a common name and another man's picture despite

discrepant identifying information and without pursuing easily obtainable evidence that ended up exculpating Plaintiff. He did so after Plaintiff voluntarily approached authorities and provided government-issued clearance nearly one thousand miles away from where the warrant had been issued. Given these factual allegations, dismissing Plaintiff's claim at this stage would approach a position that the Missouri warrant would make reasonable the arrest of any man named "Shawn L. Hill" an officer happened to encounter. Of course, further development of these facts may show Officer Buoniconti's decision to have been objectively reasonable. But for this motion, Plaintiff's Complaint adequately alleges the Fourth Amendment violation necessary to state a § 1983 claim.

### B. Officer Buoniconti has not carried his burden of establishing his entitlement to qualified immunity.

Officer Buoniconti also contends that qualified immunity compels the dismissal of Plaintiff's claim against him. *See* DE 45 at 6. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "When a qualified-immunity defense is raised, [courts] apply a two-step test." *Stanton v. Elliott*, 25 F.4th 227, 233 (4th Cir. 2022). The first step asks whether the facts viewed in Plaintiff's favor make out a violation of his constitutional rights, and the second step asks whether the violated right was clearly established. *See id.*

The Fourth Circuit splits the burdens of proof for the qualified immunity defense. *See id.* (citing *Henry v. Purnell*, 501 F.3d 374, 377–78 & n.4 (4th Cir. 2007)). Plaintiff bears the burden of establishing a violation under the first step. *See id.* As explained above, Plaintiff adequately alleges that Officer Buoniconti violated his Fourth Amendment right to be free from unreasonable seizures. Officer Buoniconti bears the burden under the second step of proving that the right was

not clearly established at the time and that he is therefore entitled to qualified immunity. *See id.*; *see also Mays v. Sprinkle*, 992 F.3d 295, 302 n.5 (4th Cir. 2021). He has not attempted to do so.

Officer Buoniconti has not offered any argument that would discharge his burden. *See Santifort v. Guy*, No. 4:14-CV-225-F, 2015 WL 5242922, at *8 (E.D.N.C. Sept. 8, 2015) (denying a motion to dismiss for the same deficiency). In support of his demand for dismissal, Officer Buoniconti's brief "recounts a few broad principles regarding qualified immunity." *See* DE 45 at 6–8; *Jamison v. Kincaid*, No. 3:19CV19, 2020 WL 5414687, at *5 (E.D. Va. Sept. 9, 2020). He does not, however, "argue[] with any particularity that the alleged constitutional . . . violations were not clearly established at the time they occurred, or that an objectively reasonable person would not have known that his actions violated [Plaintiff's] clearly established rights." *See Moxley v. Town of Walkersville*, 601 F. Supp. 2d 648, 665 (D. Md. 2009); *see also Dieppa v. Clarke*, No. 7:18-CV-00455, 2019 WL 2997846, at *12 (W.D. Va. July 9, 2019) (quoting *Shabazz v. Johnson*, No. 3:12CV282, 2015 WL 789200, *12 n.19 (E.D. Va. Feb. 24, 2015)). Indeed, Officer Buoniconti's briefing on qualified immunity does not reference Plaintiff's Complaint or any authority relevant to Plaintiff's Fourth Amendment claim save for a single sentence defining probable cause. *See* DE 45 at 8 (quoting *Ross v. Early*, 746 F.3d 546, 561 (4th Cir. 2014)).

Denying Officer Buoniconti's motion to dismiss does not require determining the precise contours of a defendant's burden at qualified immunity's second step. Suffice to say, the "burden of proof," *see Stanton*, 25 F.4th at 233, requires more than invoking the doctrine, providing some generic statements about its operation, and demanding dismissal, *see Jamison*, 2020 WL 5414687, at *5 (quoting *Prosha v. Robinson*, No. 3:16cv163, 2018 WL 564855, at *7 (E.D. Va. Jan. 25, 2018)) ("Contrary to Defendants' approach to briefing, '[a] defendant invoking qualified immunity must do more than mention its existence and demand dismissal of the suit.'"). While the Fourth

Circuit "prefer[s] questions of qualified immunity to be decided at the earliest possible stage in litigation," *see Raub v. Campbell*, 785 F.3d 876, 881 (4th Cir. 2015) (internal quotation marks omitted), this preference provides no basis for overriding the burden of proof precedent places on Officer Buoniconti. He may renew and adequately support a claim of qualified immunity at a later stage. *See, e.g.*, *Jamison*, 2020 WL 5414687, at *6; *Fisher v. Neale*, No. 3:10CV486-HEH, 2010 WL 3603495, at *3, 3 n.6 (E.D. Va. Sept. 8, 2010). But because he has failed to carry his burden, his motion to dismiss based on qualified immunity must be denied.

## IV.   Officer Buoniconti's Motion to Strike Plaintiff's Request for Punitive Damages

The court construes the portion of Officer Buoniconti's motion seeking the dismissal of "any purported claim against him by Plaintiff for punitive damages," *see* DE 45 at 15, to be a motion to strike that portion of Plaintiff's request for relief. Plaintiff brings only one claim against Officer Buoniconti—a Fourth Amendment claim against him in his individual capacity under 42 U.S.C. § 1983. *See* DE 30 ¶¶ 36–41; *see also* DE 52 at 2 n.1. Within this "First Cause of Action," Plaintiff states that he "brings this claim pursuant to 42 U.S.C. § 1983," *see* DE 30 ¶ 36, and asserts that he "seeks and is entitled to punitive damages against [Officer] Buoniconti under Chapter 1D of the General Statutes" of North Carolina, *see id.* ¶ 40. Plaintiff also includes a request for punitive damages in his prayer for relief. *See id.* at 10 (seeking, among other things, "[a]n award of punitive damages against [Officer] Buoniconti, individually"). The court grants in part and denies in part Officer Buoniconti's motion to strike this request.

Federal Rule of Civil Procedure 12(f) allows a court, acting sua sponte or on a motion, to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Generally, such motions "are only granted when the challenged allegations have no possible relation or logical connection to the subject matter of the

17

controversy' or cause some form of significant prejudice to one or more of the parties to the action." *See Faulkner v. York Cnty. Sch. Dist.*, No. 0:21-CV-02090-JMC, 2022 WL 673684, at *3 (D.S.C. Mar. 7, 2022) (internal quotation marks omitted). When reviewing a motion to strike, "the court must view the pleading under attack in a light most favorable to the pleader." *See id.*

Plaintiff does not bring any claim under North Carolina law against Officer Buoniconti. *See* DE 30 ¶¶ 36–41; *see also* DE 52 at 2 n.1. He cannot recover punitive damages under Chapter 1D of the General Statutes without an underlying state law cause of action. *See Anderson v. S. Health Partners, Inc.*, No. 4:20-CV-00095-M, 2020 WL 6326098, at *6 (E.D.N.C. Oct. 28, 2020) (dismissing a purported "claim" for punitive damages where all other state law causes of action against the defendant had been dismissed because a request for punitive damages cannot exist as an independent cause of action). Thus, Plaintiff's assertion of his entitlement to damages under Chapter 1D of the General Statutes, *see* DE 30 ¶ 40, will be stricken from his Complaint.

Plaintiff has, however, sought punitive damages in his prayer for relief under a federal cause of action that can support such an award. Plaintiff seeks punitive damages in his prayer for relief for his claim under 42 U.S.C. § 1983 against Officer Buoniconti in his individual capacity. *See* DE 30 at 10. Punitive damages from officers in their individual capacity are "available in section 1983 actions for conduct that involves 'reckless or callous indifference to the federally protected rights of others,' as well as for conduct motivated by evil intent." *See Cooper v. Dyke*, 814 F.2d 941, 948 (4th Cir. 1987) (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983)).

Officer Buoniconti contends that Plaintiff "fails to allege or describe any facts" that would merit an award of punitive damages. *See* DE 45 at 15 (quoting *Cooper*, 814 F.2d at 948 (4th Cir. 1987)). Plaintiff alleges that Officer Buoniconti acted in "willful and wanton disregard for [his] rights." *See* DE 30 ¶ 40. He also alleges that Officer Buoniconti recognized that his confirmatory

18

efforts showed Plaintiff not to be the subject of the warrant, *see id.* ¶¶ 13–16, and disregarded a statutory obligation to take his fingerprints after Plaintiff asked to provide them, *see id.* ¶¶ 20–21, 38. Although his allegations of reckless conduct are relatively sparse, they suffice at this early stage to allow the issue of punitive damages to go forward. Thus, what the court construes to be Officer Buoniconti's motion to strike is granted as to Plaintiff's reference to Chapter 1D of the General Statutes but denied as to his request for punitive damages under 42 U.S.C. § 1983 in his prayer for relief.

## V.  Sheriff McMahon's Motion to Dismiss Plaintiff's Common Law Negligence Claim

Plaintiff brings a negligence claim under North Carolina law against Sheriff McMahon in his official capacity *See* DE 30 ¶ 3 (citing N.C. Gen. Stat. §§ 58-76-5 and 153A-435). Plaintiff claims that Sheriff McMahon can be held liable for the actions and omissions of his officers under the doctrine of *respondeat superior. See id.* He also contends that Sheriff McMahon waived any immunity from this claim by purchasing a surety bond. *See id.* Plaintiff invokes the court's supplemental jurisdiction under 28 U.S.C. § 1367, "as this state law claim arises from the same case or controversy" as his Fourth Amendment claim against Officer Buoniconti. *See id.* ¶ 5.

Sheriff McMahon does not challenge these contentions for this motion, *see, e.g.*, DE 34 at 4 n.3, but maintains that Plaintiff has failed to state a negligence claim on which relief can be granted, *see id.* at 6. Plaintiff argues that Sheriff McMahon breached a duty to protect his constitutional rights by failing to investigate his potentially exculpatory evidence during his pretrial detention in Sheriff McMahon's custody. *See generally* DE 43 at 11. The court determines that Plaintiff has not alleged a breach of Sheriff McMahon's duties to him as those have been interpreted under North Carolina law and dismisses his negligence claim without prejudice.

Case 7:21-cv-00059-M   Document 56   Filed 08/24/22   Page 19 of 27

To resolve Plaintiff's common law negligence claim, the court applies the federal pleading standards set out above and North Carolina substantive law. *See Kerr v. Marshall Univ. Bd. of Governors*, 824 F.3d 62, 74 (4th Cir. 2016). As to the latter, the court must "apply the governing state law, or, if necessary, predict how the state's highest court would rule on an unsettled issue." *See Askew v. HRFC, LLC*, 810 F.3d 263, 266 (4th Cir. 2016); *see also Fontenot v. Taser Int'l, Inc.*, 736 F.3d 318, 326 (4th Cir. 2013) (requiring this prediction because no mechanism exists for certifying questions of unsettled state law to the Supreme Court of North Carolina). Without a controlling decision by the Supreme Court of North Carolina, the court may consider opinions by the North Carolina Court of Appeals, treatises, and "the practices of other states." *See Twin City Fire Ins. Co. v. Ben Arnold-Sunbelt Beverage Co. of S.C.*, 433 F.3d 365, 369 (4th Cir. 2005). That said, the Fourth Circuit has repeatedly cautioned district courts against creating or expanding state common law when making these predictions. *See, e.g.*, *Time Warner Ent.-Advance/Newhouse P'ship v. Carteret-Craven Elec. Membership Corp.*, 506 F.3d 304, 314–15 (4th Cir. 2007) (quoting *Mitcheson v. Harris*, 955 F.2d 235, 238 (4th Cir. 1992)).

To state a claim for North Carolina common law negligence, Plaintiff must allege: (1) a legal duty; (2) a breach thereof; and (3) injury proximately caused by the breach. *Fussell v. N. Carolina Farm Bureau Mut. Ins. Co.*, 364 N.C. 222, 226, 695 S.E.2d 437, 440 (2010). Put differently, "[a]ctionable negligence arises when there is a violation of some legal duty owed by a defendant to a plaintiff, . . . and in the absence of any such duty owed the injured party by the defendant, there can be no liability." *Hedrick v. Rains*, 121 N.C. App. 466, 469, 466 S.E.2d 281, 283, *aff'd per curiam*, 344 N.C. 729, 477 S.E.2d 171 (1996) (internal citations and quotation marks omitted). As to establishing a breach of a duty, law enforcement officers sued for negligence are "held to the standard of care that a reasonably prudent person would exercise in the discharge of

official duties of a like nature under like circumstances." *See Best v. Duke Univ.*, 337 N.C. 742, 752, 448 S.E.2d 506, 511 (1994).

Sheriff McMahon agrees that he owed Plaintiff an affirmative duty by virtue of Plaintiff's pretrial detention in his custody at the New Hanover County Jail. *See* DE 34 at 10 (acknowledging that this established a "special relationship" with Plaintiff). As a sheriff, his "responsibilities are defined both by statute and by the common law." *See Baker v. Smith*, 224 N.C. App. 423, 428, 737 S.E.2d 144, 148 (2012). The parties disagree as to the scope of the duty owed and whether Plaintiff adequately alleges a breach thereof.

Plaintiff alleges that Sheriff McMahon "owed [him] a duty of reasonable care to investigate the details of [his] exculpatory evidence." *See* DE 30 ¶ 43. He contends that, "at minimum," this required Sheriff McMahon's officers to take his fingerprints to determine whether he was the man identified in the fugitive warrant after he told them "multiple times" that he had not yet been fingerprinted. *See id.* Plaintiff suggests three sources for the alleged duty to investigate exculpatory evidence—statutory directives, *see* DE 30 ¶ 44; the magistrate's order, *see id.*; and the common law duty of ordinary care vis-à-vis his constitutional rights, *see* DE 43 at 7–11. Sheriff McMahon maintains that he complied with all applicable duties. *See* DE 49 at 3–4.

The court dispenses first with the argument that Sheriff McMahon violated a statutory directive to take Plaintiff's fingerprints or otherwise investigate his claims. *See* DE 30 ¶ 44. Sheriffs' statutory duties are set out in Article 3 of Chapter 162 of the General Statutes. Section 22 charges Sheriff McMahon with the "care and custody" of the New Hanover County Jail but imposes no more specific obligation applicable here. *See* N.C. Gen. Stat. § 162-22. Plaintiff, instead, points to N.C. Gen. Stat. § 15A-502. *See* DE 30 ¶ 44.

Even if § 15A-502 imposes duties enforceable by pretrial detainees in tort, this section did not require Sheriff McMahon to take Plaintiff's fingerprints. Section 15A-502 generally makes the "arresting law-enforcement agency" responsible for ensuring that arrestees are fingerprinted. *See* N.C. Gen. Stat. § 15A-502. As alleged, that agency would be the North Carolina State Ports Authority. *See* DE 30 ¶¶ 2, 10. Subsection (f) does provide for a court "order[ing] the defendant to submit to fingerprinting by the Sheriff or other appropriate law enforcement agency at the earliest practical opportunity." *See* N.C. Gen. Stat. § 15A-502(f). But this subsection applies only to persons who are "charged with an offense for which fingerprints are required pursuant to this section but the person is not arrested for that offense." *See id.* Nothing here suggests that this subsection applies as Plaintiff alleges only that he was arrested in connection with an out-of-state fugitive warrant naming another man. *See* DE 30 ¶¶ 22–23.

Nor does the magistrate's order support the obligation Plaintiff alleges. Plaintiff emphasizes that the order required him to provide his fingerprints under N.C. Gen. Stat. § 15A-502. *See id.* ¶¶ 26, 44. But the order required that Plaintiff do so "[p]rior to release," which the order stated was "not authorized." *See* DE 30-1 at 2. As to Sheriff McMahon, the order directed him only to receive Plaintiff into his custody and to "produce [him] in Court as provided above" if he "is not sooner released." *See id.* Consistent with this directive, his officers detained Plaintiff at the New Hanover County Jail after being served with a copy of this order. *See* DE 30 ¶ 26.

This leaves only the common law duty of ordinary care owed by virtue of Plaintiff's pretrial detention in Sheriff McMahon's custody. The "duty of ordinary care is no more than a duty to act reasonably" and "extends only to causes of injury that were reasonably foreseeable and avoidable" through its exercise. *See Fussell*, 364 N.C. at 226, 695 S.E.2d at 440. By taking Plaintiff into his custody, Sheriff McMahon agrees that he accepted an obligation to provide for Plaintiff's "safety

22

and general well-being." *See* DE 49 at 4 (citing *Multiple Claimants v. N. Carolina Dep't of Health & Hum. Servs.*, 176 N.C. App. 278, 295, 626 S.E.2d 666, 677 (2006), *aff'd as modified sub nom. Multiple Claimants v. N. Carolina Dep't of Health & Hum. Servs., Div. of Facility Servs., Jails & Det. Servs.*, 361 N.C. 372, 646 S.E.2d 356 (2007)) (quoting *DeShaney v. Winnebago Cnty. Dep'[t of Soc. Servs.*, 489 U.S. 189, 199-200 (1989))). No allegation suggests that Sheriff McMahon violated this duty as it has been interpreted under North Carolina law.

Cases from North Carolina courts addressing sheriffs' liability to persons held in their custody have focused on failures to provide reasonable protection from physical perils or deprivations. *See, e.g.*, *Multiple Claimants*, 361 N.C. at 379, 646 S.E.2d at 361 (acknowledging that the county was primarily responsible for the "health and safety of the inmates" in the jail because "inmates in custody necessarily have limited freedom to provide for themselves or to protect themselves from external dangers such as fire"); *State ex rel. Williams v. Adams*, 288 N.C. 501, 504, 219 S.E.2d 198, 200 (1975) (citing *Dunn v. Swanson*, 217 N.C. 279, 7 S.E.2d 563 (1940)) (summarizing with approval a note suggesting that *Dunn* was "in accord with the general rule that 'a prison official is liable when he knows of, or in the exercise of reasonable care should anticipate, danger to the prisoner, and with such knowledge or anticipation fails to take the proper precautions to safeguard his prisoners.'"); *Dunn*, 217 N.C. at 279, 7 S.E.2d at 563 (recognizing that a sheriff and the surety on his bond could be held liable for his officers negligently placing a prisoner who was "in a weak, sick, and helpless condition" in the same cell as the violently insane inmate who killed him); *Spicer v. Williamson*, 191 N.C. 487, 487, 132 S.E. 291, 294 (1926) (recognizing a sheriff's duty to "procure proper medical attention for his prisoner" when confronted with an "emergency"); *State v. Jones*, 41 N.C. App. 189, 191, 254 S.E.2d 234, 236 (1979) (recognizing that the officer with charge of the jail premises and prisoners had the duty to "investigate or 'check'

on the prisoners in his charge and any disturbance on the premises" in a case involving a jailhouse assault). At least one North Carolina decision referenced the United States Supreme Court's statements on the "special relationship that arises from imprisonment." *See Multiple Claimants*, 176 N.C. App. at 295, 626 S.E.2d at 677 (quoting *DeShaney*, 489 U.S. at 199–200). But again, the statement cited pertained to plaintiffs who are "unable to care for [themselves]" and deprived of "basic human needs—*e.g.*, food, shelter, medical care, and reasonable safety." *See id.* Plaintiff makes no allegation that Sheriff McMahon failed to provide for these "basic human needs."

Plaintiff instead argues that Sheriff McMahon breached a "duty to protect [his] substantive due process rights" by not promptly taking his fingerprints and comparing them to those of the individual connected with the fugitive warrant on which he was ordered detained by the magistrate. *See* DE 43 at 9. He bases his contention in dicta about possible due process violations in *Baker v. McCollan*, 443 U.S. 137 (1979) and decisions from other circuits extending these statements in cases involving constitutional claims. *See* DE 43 at 7–9 (collecting cases). Sheriff McMahon stresses that Plaintiff cites no decision interpreting North Carolina law that allowed a negligence claim to proceed based on these federal civil rights decisions. *See* DE 49 at 3.

Plaintiff does not cite—nor has this court found—any decision interpreting North Carolina law to include within a sheriff's duty of ordinary care the investigation of evidence that might exculpate a pretrial detainee committed to his custody on a magistrate's order. *Baker* held that deputies detaining a man who had been mistakenly named in an arrest warrant had no constitutional obligation to independently investigate every claim of innocence. *See* 443 U.S. at 143–44, 145–46. In holding that the plaintiff's detention did not support a constitutional claim, the United States Supreme Court did not comment on "[w]hatever claims this situation might give rise to under state tort law." *See* 443 U.S. at 144. The Court went on to "assume, *arguendo*" that

24

indefinite detention of a person protesting his innocence could eventually amount to a due process violation "depending on what procedures the State affords." *See id.* at 145. But irrespective of whatever relief might now be available under a constitutional claim,[4] *Baker's* conditional assumption about the possibility of a constitutional violation has not been recognized under North Carolina law as the basis for an obligation enforceable by pretrial detainees in a negligence action.

This absence of any North Carolina case law supporting Plaintiff's position is "significant because in construing the common law of a state," the Fourth Circuit has "declined to expand state common law principles to encompass novel circumstances when the courts of that state have not done so first." *See Fontenot*, 736 F.3d at 331 (citing *Time Warner Ent.-Advance/Newhouse P'ship*, 506 F.3d at 314–15. It would expand North Carolina law to allow a negligence claim against Sheriff McMahon to proceed based on an alleged obligation to investigate exculpatory evidence that no case interpreting North Carolina law has recognized. *See id.* (refusing to apply a common law contributory negligence defense to a new context for the same reasons). As a result, Plaintiff's negligence claim must be dismissed.

No allegation suggests a violation of the duty of care Sheriff McMahon owed to Plaintiff as that duty has been interpreted under North Carolina law. Plaintiff's argument that this duty also required him to investigate evidence that might exculpate pretrial detainees held in his custody finds no support in any decision interpreting North Carolina law. Even if Sheriff McMahon's duty could include this obligation, "this court cannot now be the first to pronounce so." *See Bauer v.*

---

[4] The Supreme Court has since held that the Fourth Amendment, rather than the Due Process Clause, governs constitutional claims about unlawful pretrial detention. *See Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911, 919–20 (2017); *see also Smith*, 31 F.4th at 885 (quoting *Manuel*, 137 S. Ct. at 919–20) (noting that *Manuel* held that a Fourth Amendment detention claim cannot be "convert[ed]" into a due process claim).

*Charter Sch. USA, Inc.*, No. 5:21-CV-492-FL, 2022 WL 2721339, at \*3 (E.D.N.C. July 13, 2022) (quoting *Time Warner Ent.-Advance/Newhouse P'ship*, 506 F.3d at 314). Sheriff McMahon's motion is thus granted, and Plaintiff's negligence claim against him is dismissed without prejudice.

## VI.    Ohio Casualty's Motion to Dismiss Plaintiff's Statutory Claim

Plaintiff asserts a statutory claim against the surety bond issued to Sheriff McMahon by Ohio Casualty under N.C. Gen. Stat. §§ 58-76-5 and 162-50. *See* DE 30 ¶ 49. These statutes provide that "[e]very person injured by the neglect, misconduct, or misbehavior in office of any . . . sheriff . . . may institute a suit or suits against said officer" and the surety on his bond. *See* N.C. Gen. Stat. § 58-76-5. Thus, Plaintiff may "maintain suit against a public officer and the surety on his official bond for acts of negligence in performing his official duties." *See Smith v. Jackson Cty. Bd. of Educ.*, 168 N.C. App. 452, 468–69, 608 S.E.2d 399, 411–12 (2005). That said, the parties agree that statutory claims against sureties "rise and full upon the underlying claims asserted against the sheriff." *See* DE 41 at 4 (citing *Hensley v. Suttles*, 167 F. Supp. 3d 753, 769 (W.D.N.C. 2016), *aff'd sub nom. Hensley on behalf of N. Carolina v. Price*, 876 F.3d 573 (4th Cir. 2017)); DE 43 at 2 (citing DE 41 at 4). Ohio Casualty's motion is thus granted based on the dismissal of Plaintiff's underlying negligence claim against Sheriff McMahon.

## VII.    Conclusion

In sum, Plaintiff's action will proceed only against Officer Buoniconti. Officer Buoniconti's motion [DE 44] is GRANTED IN PART AND DENIED IN PART. Plaintiff adequately alleges that Officer Buoniconti violated his Fourth Amendment rights, and Officer Buoniconti has not established his entitlement to qualified immunity. Officer Buoniconti's motion to dismiss Plaintiff's claim is thus denied without prejudice to his reassertion of a qualified immunity defense at a later stage. What the court construes as Officer Buoniconti's motion to strike Plaintiff's request for punitive damages is granted only as to Plaintiff's reference to Chapter

1D of the General Statutes. Punitive damages may be available under 42 U.S.C. § 1983 upon an appropriate showing. The order staying discovery [DE 50] is thus LIFTED as to this claim.

Sheriff McMahon's motion to dismiss [DE 33] is GRANTED, Plaintiff's common law negligence claim against him is DISMISSED WITHOUT PREJUDICE, and Sheriff McMahon is DISMISSED from this action. As a result of this dismissal, Ohio Casualty's motion to dismiss [DE 40] is GRANTED, Plaintiff's claims against it are DISMISSED, and Ohio Casualty is DISMISSED from this action.

SO ORDERED this 24th day of August, 2022.

Richard E Myers II

RICHARD E. MYERS II
CHIEF UNITED STATES DISTRICT JUDGE